IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** § | |
| § | |
| v.  § | Criminal No. **3:09-CR-125-L** |
| § | |
| **MOSES COPPIN** § | |

## MEMORANDUM OPINION AND ORDER

Before the court are: (1) Motion for Pretrial Notice under Rule 404(b) of Intention of Government to Introduce Evidence of Other Crimes, Wrongs or Acts, filed July 24, 2009; (2) Motion to Suppress Evidence, filed July 24, 2009; and (3) Defendant's Motion to Dismiss the Indictment as it is Based on an Unconstitutional Statute and for Failure to State a Federal Offense, for Lack of Federal Jurisdiction, filed July 24, 2009. After carefully considering the motions, the court **denies as moot** Motion for Pretrial Notice under Rule 404(b) of Intention of Government to Introduce Evidence of Other Crimes, Wrongs or Acts; **grants** Motion to Suppress Evidence; and **denies** Defendant's Motion to Dismiss the Indictment as it is Based on an Unconstitutional Statute and for Failure to State a Federal Offense, for Lack of Federal Jurisdiction.

**I.   Background**

Defendant Moses Coppin was indicted on May 6, 2009, on a single count of felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). An arrest warrant was issued, and Coppin was arrested on June 1, 2009. He pleaded not guilty on June 3, 2009, and was released under certain conditions. The government moved to revoke his pretrial release; the motion was granted, and Coppin was ordered to be detained for the pendency of this action on June 24, 2009. A jury trial is set for September 14, 2009.

**Memorandum Opinion and Order – Page 1**

**II.     Motion for Pretrial Notice under Rule 404(b)**

Defendant moves for pretrial notice pursuant to Rule 404(b) of the Federal Rules of Evidence of the government's intent to introduce evidence of other crimes, wrongs, or acts. The government does not oppose the motion, and gives notice to Defendant that it intends to offer into evidence one of Defendant's prior convictions for sexual assault of a child and indecency with a child. The government states that it turned over documents relating to Defendant's prior convictions in discovery. Because the government does not oppose the motion and has given notice pursuant to Rule 404(b), the court **denies as moot** Motion for Pretrial Notice under Rule 404(b) of Intention of Government to Introduce Evidence of Other Crimes, Wrongs or Acts, filed July 24, 2009.

**III.     Motion to Suppress**

Defendant moves to suppress all evidence, including a firearm and ammunition, seized as a result of the June 29, 2008 warrantless search of an automobile in which he was a passenger. He also argues that any statements alleged to have been made by him were improperly obtained as a result of illegal seizure. Defendant relies upon the recent Supreme Court case of *Arizona v. Gant*, 129 S.Ct. 1710 (2009), and argues that a warrantless search was only permissible if "the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." *Id*. at 1719.

The government opposes the motion and argues that *Gant* is inapplicable because the search was not a search incident to arrest, as in *Gant*, but rather, a search pursuant to a traffic stop pursuant to *Michigan v. Long*, 463 U.S. 1032 (1983). It argues that Defendant was not arrested at the time of the search, that the search was reasonable, and that he cannot show that his Fourth Amendment rights were violated.

The court held two hearings on the motion to suppress: an evidentiary hearing on August 31, 2009, and additional argument on September 10, 2009. Although the briefing considered both the reasonableness of the stop and the search, the focus of the dispute shifted to whether there was a reasonable basis for the traffic stop.

### A.      Legal Standard

The Fourth Amendment to the United States Constitution provides that, "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." Its protection against unreasonable searches and seizures applies to traffic stops of vehicles; "The stopping of a vehicle and detention of its occupants constitutes a seizure under the Fourth Amendment." *United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004). In determining if a traffic stop is reasonable, the court must consider "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry v. Ohio*, 392 U.S. 1, 20 (1968). An investigative vehicle stop is permissible only when "the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot. An officer's mere hunch or unparticularized suspicion is not sufficient; rather, a minimal level of objective justification for the stop must be present." *United States v. Jaquez*, 421 F.3d 338, 340 (5th Cir. 2005) (internal quotations and citations omitted). The burden is on the government to show "the reasonableness of a warrantless search or seizure." *Id*. at 341.

### B.      Evidence

The court held an evidentiary hearing on August 31, 2009. Dallas Police Officers Ashly Carrillo and Richard Saliba testified on behalf of the government, and Derrick Cottingham testified on behalf of Defendant.

Defendant was a passenger in a Lincoln Town Car driven by Derrick Cottingham that was stopped early on June 29, 2008, by Officer Carrillo and his partner. Officer Carrillo testified that the car was driving northbound on Dilido Road and that he and his partner initiated a traffic stop because the rear license plate light was out. He further testified that during the stop, Officer Saliba, who had pulled over a silver sports utility vehicle, also at 2900 Dilido Road, joined him during the stop. Carrillo stated that Saliba approached the driver, and he approached the passenger. He testified that Defendant was dressed in black, wore gloves, and had a ski mask on top of his head. He also stated that Defendant made furtive gestures with his hand towards the area under his seat and that he saw a bandana on the floor of the car. He testified that he asked Defendant to put his hands up several times, and when Defendant did not comply, he opened the passenger door and removed Defendant from the car and patted him down. He stated that Saliba removed Cottingham from the car and that the two men were seated on the curb near the rear of the car. According to Officer Carrillo, he noticed what he thought was the grip of a gun under the seat. He therefore searched the car pursuant to *Terry v. Ohio* and found a gun and ammunition. Upon finding the gun, he placed Defendant under arrest.

Officer Saliba testified that on the night in question, he and his partner were working in the same area and stopped a silver sports utility vehicle on Dilido Road for excessive noise. He stated that out of the corner of his eye he saw another police vehicle initiating a traffic stop just south of his position. According to Saliba, the Lincoln Town Car stopped within twenty yards of him. He testified that he looked over to the Town Car, made eye contact with the driver of that car, and saw him begin to slump down in the seat, which concerned him. He stated that he could not see the hands of the driver of the Lincoln Town Car and noticed that although the car had Virginia tags, it

did not have corresponding Virginia tags in the middle of the windshield but that there was a Texas sticker on the left side of windshield. He testified that he exited his patrol vehicle and approached the driver's side window of the Lincoln Town Car. Officer Saliba testified that he heard Carillo ask the passenger to let him see his hands and that he saw the passenger leaning forward and could not see his hands. According to Saliba, he then drew his weapon. He testified that when Carrillo removed Defendant from the passenger side, he removed Cottingham from the driver's side of the car, performed a *Terry* frisk of him, and then walked him around the front of the car to the curb. He stated that the two men were seated on the curb until Carrillo found the gun in the car and the two men were arrested.

Derrick Cottingham testified that he was not driving the car when the police pulled up behind him and turned on the flashing lights. He maintains that he was waiting at the entry gate to an apartment complex located at 2900 Dilido Road. He states that the police officers did not ask any questions, but approached the car, opened the doors, placed him and Defendant on the curb a distance from the car, searched the passenger compartment, and arrested them. He states that his rear license plate light was working because he had recently replaced it after being pulled over by the Grapevine police. He testified that he had been pulled over and given a warning, and that he replaced the rear license plate light because he was staying in a nice area and did not want to give the police an excuse to pull him over again.

Upon questioning from the court, both officers testified that they did not know if the cars they were driving that night were equipped with dash cameras. The court then ordered the government to determine if the cars had cameras and to submit any evidence to the court. On September 3, 2009, the government submitted evidence to the court relating to the cars driven that night, the arrest

**Memorandum Opinion and Order – Page 5**

reports for the silver sports utility vehicle, and the Dallas Police Department's policy on retaining videos. The court held a second hearing on September 10, 2009, for further argument in light of this additional evidence.

### C.    Analysis

The court has carefully reviewed the evidence, the testimony, and transcript of the evidentiary hearing. There are multiple inconsistencies in the testimony and evidence. These include not only discrepancies between the version of events set forth by the government and Defendant, but also inconsistencies between the officers' testimony and the arrest reports. With respect to the arrest reports, the officers' testimony varies from those reports in major ways, including which officer found the gun, the sequence of events, and the basis for the traffic stop.

The arrest reports were written by Officer Saliba. They indicate or imply that the two officers were partners at that time and were riding in the same patrol car. There is nothing in the arrest reports that indicates that Officers Saliba and Carrillo were not partners or that they did not observe the events at the same time. Their testimony, however, made clear that the two officers were not partners and were not in the same vehicle. Saliba did not see the Lincoln Town Car until after Carrillo had initiated the traffic stop by turning on his emergency lights.

Both officers testified that it was Carrillo who searched the car and found the gun. The police report for Defendant states "[t]he following weapon . . . was found by Officer Saliba, Richard G." Coppin Arrest Report 3 (all capital letters omitted). Later in the report it states that "AO Carrillo, A. 8793 conducted a Terry frisk of the area inside the vehicle where AP Coppin was seated and found a loaded .380 caliber semiautomatic handgun, serial #175861 underneath AP Coppin's front

passenger seat." *Id*. (all capital letters omitted). Not only does the officers' testimony contradict the police report, but the report itself is internally inconsistent as to which officer found the weapon.

More problematic is the officers' testimony that Officer Carrillo initiated the stop because the rear license plate light on the Lincoln Town Car was out; the arrest reports for both Coppin and Cottingham state that the officers did not notice the license plate light until *after* the car was stopped. Defendant's arrest report states: "AO's observed a black Lincoln Town Car, Virginia tag JTR4743, traveling northbound 2900 Dilido Road displaying a Texas inspection sticker. AO's performed a traffic stop of the vehicle at 2900 Dilido Road and observed that the rear license plate light of the vehicle was inoperative." *Id*. (all capital letters omitted). Cottingham's arrest report is very similar: "AO's observed a black Lincoln Town Car, Virginia tag JTR4743, traveling northbound 2900 Dilido Road with a vehicle registration that expired 4/2008. AO's performed a traffic stop of the vehicle at 2900 Dilido Road and observed that the rear license plate light of the vehicle was inoperative." Cottingham Arrest Report 3 (all capital letters omitted).

According to both arrest reports, the reason the officers stopped the vehicle was because of the Virginia license tags and the Texas inspection sticker. These portions of the arrest reports do not square with the testimony. Officer Carrillo stated that he initiated the stop because of no rear license plate light. He did not notice the Virginia tags until after he activated the police vehicle's overhead emergency lights. He never testified that he was aware that the Town Car's license expired in April 2008. Moreover, Officer Saliba testified that he noticed the Virginia tags and Texas inspection sticker only after Officer Carillo had stopped the vehicle. Officer Saliba observed the Town Car, its Texas inspection sticker, and Virginia tags *only* because Officer Carrillo had stopped the vehicle.

**Memorandum Opinion and Order – Page 7**

Officer Saliba did testify that the computer program used in creating the police reports uses certain templates and fills in some information for the user, and both officers admitted that their testimony was at odds with the police reports. The use of templates may explain some of the inconsistency, but the court does not believe that the officers could not have made changes or edit what they now claim is incorrect information. Saliba also testified that he reviewed the reports before they were submitted to the jail sergeant and agreed that making accurate reports is a very important part of his job. Moreover, Carrillo testified he knew that a supplemental report could have been submitted to correct errors in the arrest report, but he was not familiar with the procedure to submit a supplemental report.

Both officers testified that they were not aware or could not remember if their patrol cars had a dash camera that began recording when the flashing lights are activated. The court's request for additional information resulted in a determination that both cars had functioning dash cams, but that the recordings from the night in question had been destroyed pursuant to the General Orders of the Dallas Police Department, which provide for a ninety-day period for such recordings, unless flagged for further retention.

The officers' testimony is also brought into doubt by Cottingham's testimony about his rear license plate light. He testified that he had been pulled over by the Grapevine police and had changed the light to avoid being pulled over again. At the second hearing, Defendant submitted evidence corroborating his testimony that he was stopped by the Grapevine police for an inoperable license plate light on May 20, 2008. The government argues that his testimony is not credible because he did not testify that he was arrested on another traffic warrant at that time. While Cottingham was not entirely forthcoming with the court and arguably created the impression that he

was stopped *only* for the license plate infraction, this evidence does corroborate his story about the license plate light, which the government did not believe initially.

The court concludes that there are multiple inconsistencies between the officers' stories, the arrest reports, and Cottingham's testimony. These inconsistencies relate directly to the most important issues regarding the traffic stop: the reasonableness of the stop and credibility. The testimony was stated in such a way to justify or enhance the reason for the initial traffic stop. Regardless of the reasons for the multiple inconsistencies – that is, whether they are the result of poor report writing, lapse of memory because of passage of time, or misrepresentations – credibility is substantially undermined. The court has serious doubts that the officers had a reasonable suspicion that the occupants of the Town Car were involved in criminal activity at the time of the stop. These inconsistencies undermine the officers' credibility to a degree that the court concludes that the government has not met its burden in showing that there was a reasonable basis for the traffic stop at its inception. As the stop was not justified, the court need not reach the parties' arguments about whether Defendant had a privacy right in the car or whether he has standing to challenge the search. Accordingly, the court concludes that the evidence found during that traffic stop must be suppressed. The court **grants** Coppin's Motion to Suppress Evidence and hereby **suppresses** the evidence obtained by the Dallas Police Department during the traffic stop on June 29, 2008.

## IV.   Motion to Dismiss

Defendant has also moved to dismiss the indictment against him, arguing that it is based on an unconstitutional statute, that it fails to state a federal offense, and that it violates his right to a grand jury finding on each of the elements. He "concedes that this motion is filed contrary to current Fifth Circuit law, but is filing the motion to preserve the issue for further review." He argues that

18 U.S.C. § 922(g)(1) in unconstitutional in light of *United States v. Morrison*, 529 U.S. 598 (2000), and *Jones v. United States*, 529 U.S. 848 (2000), and that the Fifth Circuit decisions upholding the statute are no longer good law.  He further argues that the statute is unconstitutional as applied because the indictment does not allege a substantial effect on interstate commerce, and the grand jury did not find probable cause that there was a substantial effect on interstate commerce.  Finally, Defendant argues that the indictment fails to allege the proper *mens rea* elements of the offense.

The government points out that Defendant's argument regarding the constitutionality of the statute in light of *Morrison* and *Jones* was rejected by the Fifth Circuit in *United States v. Daugherty*, 264 F.3d 513, 518 (5th Cir. 2001).  It also argues that the Supreme Court case of *Gonzalez v. Raich*, 545 U.S. 1 (2005), supports the conclusion that the statute is constitutional.  Further, it argues that the indictment clearly alleges Defendant's knowing unlawful possession of the firearm "in and affecting interstate and foreign commerce," and that it need not prove that Defendant knew that there was an interstate commerce nexus or that he knew that he was prohibited from possessing a firearm because he was convicted felon.

As Defendant concedes, his motion is foreclosed by Fifth Circuit authority.  The court is bound by this authority, and therefore it **denies** Defendant's Motion to Dismiss the Indictment as it is Based on an Unconstitutional Statute and for Failure to State a Federal Offense, for Lack of Federal Jurisdiction.

### V. Conclusion

For the foregoing reasons, the court **denies as moot** Motion for Pretrial Notice under Rule 404(b) of Intention of Government to Introduce Evidence of Other Crimes, Wrongs or Acts; **denies** Defendant's Motion to Dismiss the Indictment as it is Based on an Unconstitutional Statute and for

Failure to State a Federal Offense, for Lack of Federal Jurisdiction; and **grants** Motion to Suppress Evidence.  Accordingly, the Lorcin .380 semiautomatic handgun, serial number 175861, found during the June 29, 2008 traffic stop, any statements made during the traffic stop, and any other evidence seized during the traffic stop will be **excluded**.  During the trial, the government will not be permitted to admit, produce, or refer to any evidence seized or statements made as a result of the June 29, 2008 traffic stop.

**It is so ordered** this 11th day of September, 2009.

                              Sam A. Lindsay
                              United States District Judge